1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                          FOR THE DISTRICT OF ARIZONA

8

9   FireClean LLC, et al.,                    No. CV-16-00604-TUC-JAS

10                  Plaintiffs,               **ORDER**

11  v.

12  Andrew Tuohy,

13                  Defendant.

14

15          Pending before the Court is Defendant's motion to dismiss (Doc. 11).  For the

16  reasons stated below, the motion is denied in part and granted in part.

17  **STANDARD OF REVIEW**

18          The dispositive issue raised by a motion to dismiss for failure to state a claim is

19  whether the facts as pleaded, if established, support a valid claim for relief.  *See Neitzke*

20  *v. Williams*, 490 U.S. 319, 328-329 (1989).[1]  In reviewing a motion to dismiss for failure

21  to state a claim, a court's review is typically limited to the contents of the complaint.[2]

---

22

23      [1] Unless otherwise noted by the Court, internal quotes and citations have been omitted when quoting authority throughout this Order.

24      [2] In certain circumstances, a court may consider extrinsic evidence when
25  considering a motion to dismiss without converting it to a summary judgment motion.  In
    this case, Defendant's relevant internet postings in this litigation were both attached to
26  the First Amended Complaint (Doc. 11-"Complaint"), extensively referenced in the
    Complaint, form the basis for the causes of action in the Complaint, and may be properly
27  considered by this Court in the context of the pending motion to dismiss.  *See U.S. v.*
    *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)("A court may . . . consider certain materials -
28  documents attached to the complaint, documents incorporated by reference in the
    complaint, or matters of judicial notice - without converting the motion to dismiss into a
    motion for summary judgment . . . Certain written instruments attached to pleadings may

*See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).  Furthermore, a court must "construe the complaint . . . in the light most favorable to the non-moving party, and [a court must] take the allegations and reasonable inferences as true." *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008); *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000)(in reviewing a motion to dismiss for failure to state a claim, "we accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the non-moving party."); *Clegg*, 18 F.3d at 754 (same); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(while Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all allegations in the complaint are true (even if doubtful in fact) . . . of course, a . . . complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." ).

## BACKGROUND

Plaintiffs David Sugg and Edward Sugg own a company, FireClean, LLC ("Fireclean") that developed and markets a successful gun cleaner, lubricant, and preservative product (collectively, "gun lubricant") that is sold under the name FireClean.

---

be considered part of the pleading . . . Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim . . . The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

As reflected in its patent application, Plaintiffs' gun lubricant may consist of "a proprietary blend of at least three 'natural, non-petroleum, non-synthetic oil[s] derived from a plant, vegetable or fruit or shrub or flower or tree nut, or any combination of natural, non-petroleum, non-synthetic oils derived from a plant, vegetable or fruit or shrub or flower or tree nut,' where each oil has a smoke point above 200 degrees Fahrenheit, and the total volume of at least three oils is at least 25% of the total volume of the oil composition." *See* Complaint at ¶60.

George Fennel owns a company, Weapon Shield, that sells a competing gun lubricant.  To increase his profits and undermine Plaintiffs, Fennel started a false rumor that FireClean is nothing more than a common vegetable oil like Crisco that can be purchased in a store at a much cheaper price than FireClean.  Defendant, Andrew Tuohy, owns and operates a popular internet blog (Vuurwapen Blog) that offers commentary on issues relating to firearms and the firearm industry.  Defendant, who was in contact with Fennel, further publicized this false rumor through postings on his website and Facebook where he claimed: to commission scientific testing that showed that FireClean is nothing more than a common vegetable oil that could easily be purchased in a grocery store at a much cheaper price than FireClean, that he studiously and properly analyzed a gun firing test which showed that FireClean improperly rigged the test to their advantage, that FireClean was ineffective and not worth the exorbitant price as it is a common vegetable oil, and that FireClean and the Suggs were otherwise dishonest and should not be trusted. Defendant's negative statements at issue concerning Plaintiffs include:

> 1. "Lies, Errors and Omissions; Infrared Spectroscopy of FireClean and Crisco Oils."  Complaint at ¶ 115(a).
> 2.  "FireClean is probably a modern unsaturated vegetable oil virtually the same as many oils used for cooking."  Complaint at ¶ 115(b).
> 3. "[G]iven that people in the military are often exposed to both UV and oxygen (such as when they go outdoors) and also need corrosion protection for their firearms, I would not recommend FireClean be used by members of the military."  Complaint at ¶ 115(c).
> 4. "http://www.vuurwapenblog.com/general-opinion/lies-errors-and-omissions/where-theres-smoke-theres-liar/."  Complaint at ¶ 134(a).

- 3 -

5.   "Lies, Errors and Omissions, Severe Problems with Vickers Tactical Video."  Complaint at ¶ 134(b).

6.   "I made a discovery which calls into question any claim or statement made by FireClean as a company and Ed and Dave Sugg as individuals." Complaint at ¶134(c)

7.   "No honest person with a basic understanding of the scientific method would use handloaded or +P ammunition in a comparison with standard pressure bargain priced ammunition if the comparison was meant to show differences between lubricants and their effect on how much smoke comes out of the chamber during firing."  Complaint at ¶ 134(d).

8.   "Different ammunition was selected for the FireClean portion of the demonstration to give the appearance of more smoke and thus a cleaner gun . . . All the information required to judge the integrity of statements made by FireClean is contained in that Vickers Tactical video."  Complaint at ¶ 134(e).

9.   "Lies, Errors and Omissions; A Closer Look at FireClean and Canola Oil".  Complaint at ¶ 173(a).

10.   "According to every PhD who looked at the NMR results, FireClean and Canola oil appear to be 'effectively' or 'nearly' identical."  Complaint at ¶173(b).

11.   "However, it would be difficult to argue that vegetable oil possesses 'extreme heat resistance' when it is known to degrade in the presence of heat and oxygen...If you are comfortable with this on your firearms' internal components, then this would be a good product to use, otherwise a more thermally stable product might be in order."  Complaint at ¶ 173(c).

12.   "FireClean is, as stated previously on this blog, a common vegetable oil, with no evidence of additives for corrosion resistance or other features. The science is solid in this regard."  Complaint at ¶ 173(d)

13.   "I have absolutely no issue with the concept of making money (I applaud those who make money hand over fist) or taking a product from one sphere and introducing it to another. I think a certain amount of 'finder's fee' is absolutely reasonable . . ."  Complaint at ¶173(e).

14.   "That said, I don't think I could look someone in the eye and tell them that a bottle of vegetable oil was the most advanced gun lube on the planet, but those who can? Well, they're good salesm[en], I guess."  Complaint at ¶ 173(f)

15.   "What I do take issue with are attempts to mislead consumers and distort the facts. There is a line between being an aggressive and effective salesman and not being entirely truthful about your product, the way it works, or what it contains. It is my belief that FireClean crossed that line long ago-and that many of their recent statements are simply egregious." Complaint at ¶ 173(g).

16.   "A few weeks ago, FireClean said that putting canola oil on your

- 4 -

firearm could have catastrophic results. Some people believed that, probably because they are stupid. I don't like it when people in political arguments call the other side stupid and I don't throw around the word stupid lightly. However, if you think that putting canola oil - oil with a long history of use as an industrial lubricant for metal-to-metal contact -on your rifle is dangerous, but that putting FireClean on your rifle is safe, then you're stupid. There is no other way to define your level of intelligence and critical thinking." Complaint at ¶ 173(h).

17.  "More power to [FireClean] for having been able to sell something at a lOOx markup for three years, but they had to know the gravy train would come off the rails at some point. I admire their gusto for having done it and part of me wonders if I could look people in the eye and tell them they needed to spend $7.50 an ounce on some sort of cooking oil for their gun. I don't think I could." Complaint at ¶ 173(i).

18.  "But knowing that FireClean has been willing to manipulate testing to make themselves look good, why would you trust anything they say?" Complaint at ¶ 173(j).

19.  " . . . The oil used was FireClean . . . People lie for the strangest reasons but one of the more common reasons is to separate you from your money. Question people when they make statements you find hard to believe. Don't be a fool. Be an educated consumer." Complaint at ¶ 183.

20.  In comments to Defendant's post, including one individual who posted a picture of Crisco on a grocery store shelf, with the comment, "Speaking of FireClean, is this a good deal?" Defendant replied, "Canola oil. Go for the green cap." Complaint at ¶¶ 186-187.

Defendant, however, knew or recklessly disregarded the fact that the purported testing and analysis that Defendant allegedly relied on were unreliable and insufficient to support his false statements about Plaintiffs.  Due to Defendant's conduct, Plaintiffs' reputation and business has suffered, they have lost profits, and have filed this action seeking relief for defamation, injurious falsehood, a Lanham Act violation, intentional interference with business relations, false light invasion of privacy, and aiding and abetting tortious conduct.  Defendant has filed a motion to dismiss, and the briefs reflect that the primary causes of action at issue are defamation and the Lanham Act claim.

## DISCUSSION

### Defamation

To state a claim for defamation in Arizona, it must be shown "by a preponderance

of the evidence that: 1. [Defendant] made, said, or wrote a defamatory statement[3] of fact about [Plaintiffs]; 2. The statement was false; 3. [Defendant] made, said, or wrote the statement to a third person; and 4. The statement caused [Plaintiffs] to be damaged.  In addition, [it must be shown] . . . by clear and convincing evidence that: 5. At the time the statement was made, said, or written, [Defendant] knew that the statement was false or acted in reckless disregard of whether the statement was true or false [i.e., malice]."  *See* Civil Revised Arizona Jury Instructions (hereinafter, "RAJI"), Defamation 1A and Source and Use Note.[4]

Defendant primarily argues that Plaintiffs' defamation cause of action must be dismissed for three reasons: (1) Defendant's statements are protected as pure opinion as he disclosed the factual basis for his statements, (2) Plaintiffs have failed to show malice, and (3) Plaintiffs failed to show that Defendant's statements were substantially false.

As to Defendant's first ground for dismissal, he argues that he fully disclosed the factual basis for his opinions (i.e., lab reports regarding FireClean's chemical

---

[3] "A statement is defamatory if it tends to bring [a plaintiff] into disrepute, contempt or ridicule, or to impeach [a plaintiff]'s honesty, integrity, virtue, or reputation. The defamatory nature of the statement is determined by the natural and probable effect a reading of the entire [statement] in context would have on the mind of the average [reader or hearer]."  RAJI, Defamation 2 and Source and Use Note.

[4] As this case involves internet commentary (available to a national and worldwide audience) regarding the quality and efficacy of a gun lubricant sold to the general public, the Court finds that this case involves a matter of public concern such that First Amendment protections are applicable in this case.  *See Unelko Corp. v. Rooney*, 912 F.2d 1049, 1051-52, 1056 (9th Cir. 1990) (finding that the case involved a matter of public concern triggering First Amendment protections where a news broadcaster commented on all the "junk" he received in the mail "that didn't work" which included a product called "Rain X" that was sold in 3.5 oz. bottles for $3.70 which was supposed to give you clearer windshields; emphasizing that  the "statement about Rain–X was of general interest and was made available to the general public . . . [and that] protection of statements about product effectiveness will ensure that debate on public issues [will] be uninhibited, robust and wide-open.").  As Plaintiffs are seeking punitive damages and this case involves a matter of public concern, a showing of "malice" is required; in the defamation context, this does not refer to spite or ill will, but requires a showing that Defendant knew that the defamatory statements were false or acted with reckless disregard as to their falsity.  As such, this Order references authority that encapsulates federal law as to First Amendment protections as applied to Arizona defamation claims. *See id.*; *see also*  RAJI, Defamation Instructions Introduction and RAJI, Defamation 1A and Source and Use Note.

composition and a video of a shooting demonstration using FireClean), and therefore his statements are non-actionable pure opinions protected by the First Amendment. *See Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995) ("[W]hen an [individual] outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts [and those underlying facts are true] and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment [as pure opinion].").

Nevertheless, the U.S. Supreme Court has emphasized that there is no "wholesale defamation exemption for anything that might be labeled 'opinion' . . . Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications . . . [W]e think the breathing space which [f]reedoms of expression require in order to survive . . . is adequately secured by existing constitutional doctrine without the creation of an artificial dichotomy between 'opinion' and fact." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990); *see also Flowers v. Carville*, 310 F.3d 1118, 1128 (9th Cir. 2002) ("We have held that when a speaker outlines the factual basis for his conclusion, his statement is protected . . . This assumes, however, that the factual basis itself is true . . . A speaker can't immunize a statement that implies false facts simply by couching it as an opinion based on those facts . . . if it turns out that defendants knew the [disclosed facts] were wrong—or acted with reckless indifference in the face of some clear warning sign—then they weren't entitled to repeat them publicly and later claim that they were merely expressing nondefamatory opinions."). Taking Plaintiffs' facts as true and drawing all reasonable inferences in their favor, Plaintiffs have sufficiently alleged that Defendant had no basis to rely on the purported results of the tests he discussed or observations he purportedly made as his underlying assumptions were flawed, the purported tests were incomplete, the purported results were misleading, and Defendant's conclusions were baseless. *See generally* Complaint at ¶¶ 100-13, 229-

36, 238-40, 278.   As such, Defendant's motion to dismiss based on the disclosure of underlying facts is denied.

As Defendant's second and third arguments for dismissal are intertwined, they are discussed together in this Order.  Defendant argues that Plaintiffs have failed to properly allege malice (i.e., that Defendant knew the defamatory statements were false or acted with reckless disregard as to their falsity) and also failed to properly allege that Defendant's statements were substantially false (or termed differently, that there is no liability as Defendant's statements were substantially true).

As to the malice issue, "[a] person acts with reckless disregard of the truth or falsity of a statement when he or she has serious doubts as to whether the statement is true or false, or when he or she consciously disregards whether it is true or false."  RAJI Defamation 4A and Source and Use Note.  In addition, "[t]ruth is a complete defense to a defamation claim. Slight inaccuracies do not make a statement false if the statement is substantially true. A statement is substantially true if the statement differs from the truth only in insignificant details."  RAJI, Defamation 3 and Source.

A review of the Complaint shows that Plaintiffs have met their minimal burden on these issues to survive a motion to dismiss.  In *Flowers*, a defamation case implicating First Amendment protections and the requirement to show malice, the Ninth Circuit reversed the District Court's dismissal of the Plaintiff's case at the motion to dismiss stage.  *See Flowers*, 310 F.3d at 1130.   In reversing the dismissal, the *Flowers* court emphasized:  "This case is before us on a motion to dismiss. We ask only whether the pleadings are sufficient, not whether the plaintiff could find evidence to support them . . . The First Amendment imposes substantive requirements on the state of mind [that must be proven] in order to recover for defamation, but it doesn't require him to prove that state of mind in the complaint . . . That [plaintiff] averred the required state of mind generally, without alleging corroborating evidence, does not defeat her complaint . . . Her complaint is sufficient . . . Actual malice is a subjective standard that turns on the defendant's state of mind; it is typically proven by evidence beyond the defamatory

publication itself. For that reason, the issue of actual malice . . . cannot be properly disposed of by a motion to dismiss, where the plaintiff has had no opportunity to present evidence in support of his allegations . . . The district court threw out [plaintiff's] lawsuit before she had a chance to depose witnesses, request documents and otherwise pursue evidence necessary to her case through the discovery process. It may be improbable that [plaintiff] will find evidence to support her claims, but improbable is not the same as impossible . . . The difficulty of her task ahead, however, is no reason to deny her the opportunity to make the attempt . . . [Plaintiff] has produced no evidence yet to support them, but under our system of civil procedure, she must be given at least some chance to seek it before her lawsuit is thrown out of court." *Id.* at 1130-31.

Taking Plaintiffs' facts as true and drawing all reasonable inferences in their favor, Plaintiffs have sufficiently alleged that Defendant knew his defamatory statements were false or acted with reckless disregard as to their truth or falsity. *See* Complaint at ¶¶ 72-74, 80-84, 86-89, 91, 92, 99-101, 104-10, 228, 229, 230-34, 236-37, 238-41. Plaintiffs have sufficiently alleged substantial falsity. For example, Plaintiffs have alleged that FireClean consists of a proprietary blend of at least three oils, is not marketed or sold under any other name, label, or brand, is not made from a single type of oil, and is not Crisco Canola Oil, repackaged common canola oil, Crisco Vegetable Oil (i.e., soybean oil), or repackaged common soybean oil. *See* Complaint at ¶¶ 2, 57, 62-66, 190-204. The Complaint also alleges that Defendant's claims about FireClean's safety and fitness are false, that FireClean in fact improves the reliability and performance of firearms by reducing the adhesion of carbon residue that results from discharging a firearm, and alleges facts that undermine Defendant's claims that Plaintiffs misled, defrauded, and deceived consumers. *See* Doc. 11 at ¶¶ 57-58, 135-40, 175, 190-204, 214-15, 217-24, 226, 232-35, 270-276. In light of the foregoing, Defendant's motion to dismiss Plaintiffs' cause of action for defamation is denied.[5]

---

[5] The Court notes that Defendant summarily argues that Plaintiffs' claims for defamation, injurious falsehood, intentional interference with business relations, and false light invasion of privacy are duplicative, and that these claims fail for the same reasons

**Lanham Act**

The Lanham Act provides a cause of action for false advertising.  *See* 15 U.S.C. § 1125(a)(1)(B).  Defendant argues that Plaintiffs lack standing for their Lanham Act claim.  The Court agrees.

The Ninth Circuit has recognized a two-prong test for "false advertising" under the Lanham Act.  "A plaintiff must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is competitive, or harmful to the plaintiff's ability to compete with the defendant." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011).  A party has Article III standing to bring a Lanham Act claim if "some consumers who bought the defendant['s] product under [a] mistaken belief" fostered by the defendant "would have otherwise bought the plaintiff['s] product." *Id.* at 825.  Competitors "vie for the same dollars from the same consumer group." *Id.* at 827.

Defendant comments on gun industry issues in forums such as his website and sells a single promotional t-shirt on his website (i.e., www.vuurwapenblog.com).

___

the defamation cause of action fails.  However, as the Court has denied the motion to dismiss as to the defamation cause of action, the Court likewise denies dismissal as to injurious falsehood, intentional interference with business relations, and false light invasion of privacy claims.  To the extent Defendant argues that A.R.S. § 12-651 only permits one cause of action per publication, dismissal of Plaintiffs' alternative theories for relief at the motion to dismiss stage is premature as the purpose of A.R.S. § 12-651 is simply to protect defendants from multiple lawsuits and judgments arising from the same defamatory publication.  *See Larue v. Brown*, 235 Ariz. 440, 444–45 (Ct. App. 2014) ("The single publication rule protects defendants from being sued separately for each copy of a book or newspaper containing the allegedly defamatory statement.") (citing *Oja v. U.S. Army Corps of Engineers*, 440 F.3d 1122, 1131 (9th Cir. 2006) ("The single publication rule is designed to protect defendants from harassment through multiple suits and to reduce the drain of libel cases on judicial resources.")).  Lastly, the Court notes that Defendant summarily argues that Plaintiffs failed to properly allege a claim for aiding and abetting a competitor's tortious conduct.  Taking Plaintiffs facts as true and drawing all reasonable inferences in their favor, Plaintiffs have sufficiently alleged that Plaintiffs' competitor (George Fennell) violated the Lantham Act via false advertising, that Defendant and Fennell agreed to help each other publish false and disparaging statements about Plaintiffs, they profited from their joint conduct, Defendant knew Fennell and Plaintiffs were competitors, and for their mutual benefit, Fennell conspired with Defendant such that he published false and disparaging statements about Plaintiffs; the Complaint is sufficient to state a claim for aiding and abetting.  *See Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 23 (Ariz. 2002); *Dawson v. Withycombe*, 216 Ariz. 84, 102 (Ct. App. 2007); *Facciola v. Greenberg Traurig, LLP*, 781 F. Supp. 2d 913, 925 (D. Ariz. 2011).

1   FireClean manufactures and sells a firearm lubricant marketed to the military industry,

2   law enforcement industry, gun sales industry, gun care industry, and gun repair industry.

3   Even if a consumer chose not to purchase FireClean based on Defendant's comments, the

4   record does not support the conclusion that a consumer would have purchased

5   Defendant's product instead as Defendant does not sell firearm lubricant.  Further, while

6   it is true that a person in one of the aforementioned industries to which FireClean markets

7   its product may also purchase a t-shirt from Defendant, that is insufficient to establish

8   Defendant and FireClean are vying for the same dollars from the same consumer group.

9   Plaintiffs lack standing to bring a Lanham Act claim as Defendant and Plaintiffs are not

10  competitors.  Defendant's motion to dismiss this claim is granted.[6]

11  **CONCLUSION**

12          Accordingly, IT IS HEREBY ORDERED as follows:

13  (1) Defendant's motion to dismiss (Doc. 26) is granted as to the Lanham Act cause of

14  action, and is denied as to all other causes of action.[7]

15  (2)  All other pending motions (Docs. 22, 25) shall be terminated as moot.

16          Dated this 6th day of September, 2017.

17

18

19                                              _____
                                                Honorable James A. Soto
20                                              United States District Judge

21

22

23

24

25

26  [6] As it would be futile to allow amendment, the Lantham Act claim is dismissed
    with prejudice and without leave to amend.  *See Pink v. Modoc Indian Health Project,*
27  *Inc.*, 157 F.3d 1185, 1189 (9th Cir. 1998); *Saul v. United States*, 928 F.2d 829, 843 (9th
    Cir. 1991).

28      [7] Plaintiffs' motion to strike (Doc. 34) is denied.  As oral argument would not be
    helpful in resolving the pending motions before the Court, oral argument is denied.